543 So.2d 833 (1989)
Harvey E. BERNHARDT, M.D., Appellant,
v.
JACKSONVILLE MEDICAL CENTER INC., a Florida Corp., Appellee.
No. 88-2128.
District Court of Appeal of Florida, First District.
May 12, 1989.
Rehearing Denied June 21, 1989.
*834 H. Leon Holbrook, III, of Blalock, Holbrook & Akel, Jacksonville, for appellant.
Noah H. Jenerette, Jr., and Stuart Griggs, of Boyd & Jenerette, Jacksonville, for appellee.
WENTWORTH, Judge.
Appellant Bernhardt seeks review of a July 27, 1988 order reducing an award of damages in a breach of contract action or, in the alternative, granting a new trial on damages. We reverse and reinstate the award.
Appellant, a pathologist, on May 1, 1985 entered into a renewable one-year contract to provide pathology services for appellee/defendant, Jacksonville Medical Center, from May 1, 1985 to April 30, 1986. The contract provided that appellant was an independent contractor rather than an employee of the hospital. Under the contract, appellant earned a $50,000 annual salary as director of the hospital's lab, and was also entitled to privately bill hospital patients for whatever services he provided. The contract provided for automatic renewal at the end of the one-year term unless either party gave written notice of an intent not to renew at least 90 days prior to the end of the term. The hospital on April 30, 1986 terminated the contract without giving the requisite 90-day notice, alleging that appellant had breached the contract by contracting with another laboratory to provide pathology services. The hospital alleged that it was not required to comply with the termination provisions of the contract because of appellant's breach. Appellant denied that he had breached the contract.
A jury trial was held, and the jury returned a verdict for appellant, awarding damages of $47,413.61 together with prejudgment interest of $11,644.29 for a total of $59,057.90. The damages award was based upon evidence that appellant's monthly income from the hospital from May 1, 1985 to April 30, 1986 averaged $20,324.93, including both the salary of $4,166 per month and approximately $16,000 in private patient billings per month. Based on these figures, appellant claimed damages of $60,977.79 for the required 90-day notice period. Appellant testified that he could have performed both his obligations under his contract with appellee and his obligations under the second agreement. Evidence presented by appellant showed that during the months of May, June and July 1986 he collected $32,830.70 from a lockbox account established for his private billings to hospital patients. Appellant argued that this money should not be considered in mitigation of the damage award because it represented residual collections for services provided under his contract with the hospital, and did not represent income from other employment.
The jury returned its verdict in the amount of $47,413.00, the amount urged by appellant's counsel. During deliberations, the jury had requested the trial judge to answer the question of whether it should consider amounts billed prior to May 1, 1986 but collected after that time as mitigation of damages. The trial court declined to answer the jury's question.
The trial court on July 27, 1988 ruled that the jury verdict was grossly excessive and reduced the award of damages by $32,830.73, the amount of monies collected by appellant during May, June and July 1986 in his lockbox account. Upon entry of the remittitur the damage award was reduced to $14,582.88, along with prejudgment interest at the rate of 12% per annum from April 30, 1986, for a total of $18,631.80. The court stated in its order that in the event appellant did not accept the remittitur then appellee's motion for a new trial on the issue of damages was granted.
Under paragraph 4, titled Compensation, the contract provided:
Total compensation to the doctor for services performed shall be composed of:
1. That the pathologist receive a guaranteed salary of $50,000 per year to cover all the laboratory responsibilities and the managerial responsibilities of the lab.

*835 2. In addition, the pathologist may bill patients for tissue lab, conforming to the average charge in the city and... .
Under the terms of the contract appellant's earnings from billings to hospital patients could not be characterized as "other employment," but instead were earnings provided by the contract.
"The law is clear that the purpose of an award of damages in a breach of contract action is to place the injured party in the same financial position as he would have occupied if the contract has been fully performed." Juvenile Diabetes Research Foundation v. Rievman, 370 So.2d 33, 35-36 (Fla. 3d DCA 1979), citing Hodges v. A.P. Fries & Co., 34 Fla. 63, 69, 15 So. 682, 684 (1894); Popwell v. Abel, 226 So.2d 418, 422 (Fla. 4th DCA 1969); First National Insurance Agency, Inc. v. Leesburg Transfer & Storage, Inc., 139 So.2d 476, 482 (Fla. 2d DCA 1962). "It is, therefore, the established law of this state that in an action for breach of an employment contract [brought by an employee for an alleged wrongful discharge prior to completion of the contract] the prima facie measure of damages is the contract price of salary or wages for the unexpired term on the contract together with any unpaid balance due under the contract for services rendered before the wrongful discharge." Juvenile Diabetes at 35-36, citing Hazen v. Cobb, 96 Fla. 151, 117 So. 853 (1928); 2 Fla.Jur.2d Agency & Employment, section 134 (1977).
The question of whether the $32,830.73 income, received by appellant from private patient billings at the hospital during the months of May, June and July 1986, should have been deducted from the damages award does not involve mitigation. Appellant established that money collected from the lockbox account during May, June and July 1986 was only from residual patient billings at the hospital. These earnings were not from "other employment." Appellant's accountant testified that appellant's income was computed on a cash basis, that is, only income actually collected and deposited was recorded, and that the normal delay between billings and collection of money owed was from 30 to 90 days. Appellee's assertion is incorrect that if the $32,830 from the patient billings is added to damages of $20,000 per month, appellant would enjoy a windfall. Appellant was entitled to damages equal to three months of his average monthly income in addition to the residual income from services rendered prior to termination of the contract. If the contract had expired on July 30, 1986, 90 days after notice by appellee, appellant would have been able to collect residual earnings from prior billings through subsequent months of August, September and October. The trial court's order incorrectly characterized appellant's residual income during May, June and July 1986 as income from a "private practice" that should have been deducted from his damages. The court also erroneously characterized Zayre v. Creech, 497 So.2d 706 (Fla. 4th DCA 1986), as stating that damages should be reduced by "any monies" earned. Instead, the court in Zayre, quoting from Juvenile Diabetes at 35-36, held:
These prima facie damages, however, are subject to reduction upon proof of an amount which the employee actually earned, or could have earned through the use of due diligence in other employment of like nature, for the remainder of his term of employment under the contract.
The court further stated, quoting Juvenile Diabetes at 35-36, that, "[i]n this connection, it is often said that the plaintiff employee has a duty to mitigate his damages by reasonably seeking other employment of like nature subsequent to the breach of contract... ."
Although appellant argues in addition that the jury was improperly instructed, he seeks only reversal of the order of remittitur and reinstatement of the final judgment based on the jury verdict, rather than remand for new trial.
The order of remittitur is accordingly reversed and the cause remanded with directions that the judgment based on the verdict be reinstated.
ERVIN and BOOTH, JJ., concur.