DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LAND & SEA PETROLEUM HOLDINGS, INC.**,
Appellant,

v.

**STEVEN LEAVITT** and **ATLAS OIL SUPPLY COMPANY OF FLORIDA,**
a/k/a **ATLAS OIL COMPANY**,
Appellees.

No. 4D20-282

[May 26, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carol-Lisa Phillips, Judge; L.T. Case No. 13-007421 (25).

Kevin Markow and Darren M. Goldman of Becker & Poliakoff, P.A., Fort Lauderdale, and Jamie B. Dokovna of Becker & Poliakoff, P.A., West Palm Beach, for appellant.

William E. Grob and Sara G. Sanfilippo of Ogletree Deakins Nash Smoak & Stewart, P.C., Tampa, for appellee Atlas Oil Supply Company of Florida.

FORST, J.

Appellant Land & Sea Petroleum Holdings, Inc. appeals the trial court's entry of final judgment arising from a non-jury trial in which the court found in Appellant's favor on several claims but awarded zero dollars in damages. Appellant also appeals an order denying its motion to file a third amended complaint, wherein Appellant sought to add a claim for punitive damages.

With respect to the final judgment, Appellant asserts that: (1) the court applied the wrong legal standard in determining damages; (2) Appellant sufficiently established both lost profit and disgorgement damages; and (3) at a minimum, Appellant was entitled to nominal damages. As to the order denying Appellant's motion to amend, Appellant contends that the trial court committed reversible error because there was a substantive basis for the motion and any amendment would not have caused prejudice.

We hold that the trial court erred in not awarding Appellant nominal damages as to several of its claims. We otherwise affirm without discussion as to all other issues concerning the final judgment and order, as the trial court's findings and conclusions were supported by competent, substantial evidence and the applicable law.

## Background

Appellant is a commercial fuel supplier and servicer based in South Florida, operating as a wholly owned subsidiary of its parent company, RKA Petroleum Holdings, Inc. ("the parent company"). "At all times, [Appellant] operated under the same management structure as [the parent company,] sharing the same executive management."[1]

In June of 2012, Appellant hired Appellee Steven Leavitt ("Employee") as its Manager of Commercial Sales/Director of Sales and Operations, seeking to take advantage of Employee's wealth of experience and to expand into the Central Florida market. As a condition of employment, Employee signed a non-competition agreement, a confidentiality and non-solicitation agreement, and a non-disclosure agreement.

While employed, Employee was provided with open access to confidential and proprietary information, and interacted directly with the parent company's executive management, frequently attending executive meetings at the parent company's Michigan headquarters. Moreover, "a significant focus of [Employee's] work was to evaluate, plan and prepare for the expansion of [Appellant's] business into [C]entral Florida."

To help prepare for Appellant's entry into the Central Florida market, Employee prepared a business plan. The business plan "contained demographic information for the expanded market, competitive analysis, market supply, potential customers, and suggestions for hiring additional employees, including [a second employee] . . . who was [Employee's] hand-picked recommendation for the role of [C]entral Florida sales manager."

---

[1] These facts are taken largely from the trial court's "Final Order After Trial," upon which the trial court based its final judgment. Appellees did not appeal or cross-appeal. Thus, any findings favorable to Appellant cannot be challenged. *See Cespedes v. Yellow Transp., Inc. (URC)/Gallagher Bassett Servs., Inc.*, 130 So. 3d 243, 249 (Fla. 1st DCA 2013) ("A cross-appeal is an appellee's exclusive method of obtaining relief from error in an order, and absent a cross-appeal, an appellee may not seek affirmative relief from any part of the order; the appellee may only defend the order."). Moreover, these facts relate only to the nominal damages' aspect of the case.

Based on Employee's business plan, Appellant hired the second employee in September of 2012.

However, the second employee resigned only two days after commencing employment with Appellant, and Employee resigned less than a month thereafter, having worked for Appellant just over four months. Despite the second employee's claim that he was resigning to work outside of this industry, both he and Employee subsequently began working for Appellee Atlas Oil Company ("Competitor")—a direct competitor of the parent company—within a month of their respective resignations, with Employee serving as Competitor's Florida Director of Sales and Operations.

The evidence adduced at trial demonstrated that even before Employee's resignation and ensuing position at Competitor, he had begun to serve Competitor's interests. Unbeknownst to Appellant, by August of 2012, Employee and Competitor were "engaged in numerous emails, meetings, and other exchanges that centered on [Competitor's] plans to [also] expand into the Florida market, with Orlando being the focus." In fact, despite preparing the business plan for Appellant, Employee sent a version of the draft of the plan—which contained references to Appellant—to Competitor. Moreover, while Employee was completing the new hire paperwork for the second employee, he was simultaneously advocating for Competitor to hire the second employee "for the exact same sales job as part of [Competitor's] Florida expansion plan."

The improper conduct was not limited solely to Employee. Following Competitor's receipt of Employee's business plan, Competitor "was alerted that the information [Employee] was providing was improper to share among competitors, or would-be competitors[,]" but nonetheless "continued to seek more information from [Employee] to perfect its own Florida plan" despite clear red-flags and knowledge that Employee was working for Appellant. Indeed, the evidence at trial established that Competitor was aware that Employee was working for Appellant and attending the parent company's management meetings.

Even beyond recruiting Employee and the second employee, Competitor began interviewing or recruiting several of the parent company's employees who "attended and contributed at [the parent company's] management meetings in Michigan." These efforts "were done under a cloak of secrecy[,]" as Competitor "had issued a directive that in-house counsel was to be copied on all internal communications concerning [parent company] candidates[.]"

3

It was with this factual underpinning that Appellant filed its ten-count Second Amended Complaint, which served as the operative pleading. Four counts requested injunctive relief and the remaining six counts sought damages from Employee and/or Competitor. Specifically, Appellant sought damages for Employee's breaches of the non-competition, confidentiality and non-solicitation, and non-disclosure agreements; Employee's breach of his fiduciary duties; Competitor's aiding and abetting Employee's breach of his fiduciary duties; and Competitor's tortious interference with Appellant's advantageous business relationships.

The matter proceeded to a four-day non-jury trial, after which the trial court entered a December 31, 2019 "Final Order After Trial" ("Order"). In the Order, the trial court found that Appellant had proven that Employee "breached each of the [three employment] Agreements and that [Appellant] *suffered damages* as a result." (emphasis added). Moreover, the trial court found that Employee had breached his fiduciary duties, as "[t]he record clearly established that [Employee] breached the duty of loyalty through his pre-hire conduct carried on with [Competitor] in its ramp up and expansion into Orlando."

With respect to Competitor's conduct, the trial court found that Competitor knew of Employee's fiduciary duties but provided assistance and encouragement in breaching them and that, "[a]s a result of [Competitor's] aid and support of [Employee's] fiduciary breaches, [Appellant] has *suffered damages.*" (emphasis added). Additionally, the trial court found that Competitor had tortiously interfered with Appellant's advantageous relationships, including Appellant's rights under the three restrictive employment agreements signed by Employee, with Appellant "*suffer[ing] damages*" as a result. (emphasis added).[2]

Based on these findings, the trial court determined that Appellant had suffered damages as to several of its claims and was the prevailing party on all substantive matters. However, the court also concluded that Appellant had failed to sufficiently prove its request for lost profit or disgorgement damages. The court then directed the parties to prepare a final judgment incorporating the court's findings and conclusions.

Accordingly, Appellant submitted to the court a letter with a proposed final judgment. Within the letter, Appellant stated: "As a result of the

---

[2] Appellant's requests for injunctive relief were rendered moot because Appellant "elect[ed] not to pursue injunctive relief given the passage of time and changed circumstances." The court found in Appellant's favor as to the remaining counts requesting damages.

Court's Findings and Conclusions that liability had been established and that damages had been suffered, [Appellant] would still be entitled to nominal damages in the amount of $1.00 on each of the Counts upon which [Appellant] prevailed." Appellant's proposed final judgment assessed $1.00 on each of the claims upon which it prevailed at trial. However, despite Appellant requesting nominal damages and submitting a proposed final judgment, the trial court entered a final judgment which did not include nominal damages. Appellant thereafter timely appealed the final judgment.

## Analysis

"When a decision in a non-jury trial is based on findings of fact from disputed evidence, it is reviewed on appeal for competent, substantial evidence." *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008). "However, where a trial court's conclusions following a non-jury trial are based upon legal error, the standard of review is *de novo.*" *Id.*

On appeal, Appellant argues that it is entitled to nominal damages. In response, Competitor argues that nominal damages may be waived if not timely requested. Competitor asserts that because Appellant did not request nominal damages in its pleadings, or at any point during trial, the trial court did not err in assessing zero damages. Thus, before addressing the issue of whether Appellant is entitled to nominal damages, we first address Competitor's argument that Appellant's request for nominal damages is waived.

### A. Whether Appellant Waived Entitlement to Nominal Damages

As a preliminary matter, we first note Competitor's argument that Appellant did not specifically plead nominal damages is of no moment. This is because "[g]eneral damages . . . need not be specifically pleaded." *Hutchison v. Tompkins*, 259 So. 2d 129, 132–33 (Fla. 1972). Indeed, "[o]nly special damages must be specifically pleaded in order to be considered as an item of recovery." *Id.* And, nominal damages do not constitute special damages. *See Ault v. Lohr*, 538 So. 2d 454, 456 (Fla. 1989) (nominal damages flow from the establishment of an invasion of a legal right, closely matching the definition of general damages); *Armistead v. Waters*, 198 So. 59, 60 (Fla. 1940) (no special damages were alleged but finding the award of nominal damages appropriate); *Tedder v. Riggin*, 61 So. 244, 246 (Fla. 1913) ("No recoverable special damages are alleged, and the plaintiff is entitled on this record to a verdict and judgment only for nominal damages.").

5

However, Competitor's argument that Appellant waived its entitlement to nominal damages due to Appellant's actions at trial warrants further discussion. Appellant did not request nominal damages until several weeks after the trial court's "Final Order After Trial." However, within that order, the trial court stated that "[t]he parties *shall* prepare a Final Judgment." (emphasis added). Appellant thereafter sent the trial court a letter (later filed with the court), attached to which was Appellant's proposed final judgment. In the letter, Appellant stated that it was entitled to nominal damages of $1.00 on each of the Counts upon which it prevailed at trial. And Appellant's attached proposed final judgment contained a corresponding assessment of $1.00 on each of those claims. Thus, the trial court specifically requested proposed final judgments, and Appellant raised the issue of nominal damages in the resulting letter and the requested proposed final judgment.

We conclude Appellant's actions did not constitute a waiver of its entitlement to nominal damages. In *Bluth v. Blake*, 128 So. 3d 242 (Fla. 4th DCA 2013), and *H & U Foods, Inc. v. Ellison*, 439 So. 2d 923 (Fla. 4th DCA 1983), this Court held that a party's entitlement to nominal damages may be waived if such damages are not requested during closing argument, or as part of a jury instruction. *Bluth,* 128 So. 3d at 246; *H & U Foods, Inc.,* 439 So. 2d at 924. However, unlike in *Bluth* and *H & U Foods, Inc.*—cases in which the jury as the trier of fact had no opportunity to impose nominal damages because such damages were not requested prior to the verdict—here, the trial court had sufficient opportunity to consider Appellant's request for nominal damages, and Appellant adequately placed the issue before the trial court as the trier of fact. While a jury could not have considered the issue of nominal damages after retiring to deliberate, the trial court had the inherent authority to consider and assess nominal damages in the final judgment but did not do so. Consequently, Appellant did not waive the issue for our consideration.

*B. The Propriety of Nominal Damages*

We must next consider whether Appellant was entitled to nominal damages. "It is well established in Florida that where the allegations of a complaint show the invasion of a legal right, the plaintiff on the basis thereof may recover at least nominal damages . . . ." *Hutchison,* 259 So. 2d at 132. "[N]ominal damages are in effect zero damages and are defined as those damages flowing from the establishment of an invasion of a legal right where actual or compensatory damages have not been proven." *Ault,* 538 So. 2d at 456. A party may be entitled to nominal damages, "notwithstanding the absence of evidence regarding the correct measure

6

of damages." *Onontario of Fla., Inc. v. R.P. Trucking Co.*, 399 So. 2d 1117, 1118 (Fla. 4th DCA 1981) (quoting *Muroff v. Dill*, 386 So. 2d 1281, 1283 (Fla. 4th DCA 1980)); *see also Stevens v. Cricket Club Condo., Inc.*, 784 So. 2d 517, 519 (Fla. 3d DCA 2001) ("[N]ominal damages can be awarded when a legal wrong has been proven, but the aggrieved party has suffered no damages . . . or where . . . recoverable damages were not proven." (alterations in original) (quoting *Continuum Condo. Ass'n v. Continuum VI, Inc.*, 549 So. 2d 1125, 1127 (Fla. 3d DCA 1989))).

Despite *Hutchison*'s permissive language that a plaintiff *may* recover at least nominal damages, some uncertainty exists as to whether nominal damages are truly permissive. In *MSM Golf, L.L.C. v. Newgent*, 853 So. 2d 1086 (Fla. 5th DCA 2003)—though involving solely an action for breach of contract—the Fifth District held that "[i]t is a fundamental principle of contract law that once liability for a contract breach is established, an injured party is entitled as a matter of right to compensatory damages[,]" or "[a]t the very least," to nominal damages. *Id.* at 1087.

But in *Wilson v. University Community Hospital, Inc.*, 101 So. 3d 857 (Fla. 2d DCA 2012), the Second District stated "nominal damages *may* be recovered in cases where there is proof of injury but there is no evidence or insufficient evidence to show the actual amount of damages." *Id.* at 859 (emphasis in original). The Second District therefore certified conflict with *MSM Golf,* "reject[ing] the [] argument that nominal damages must be awarded as a matter of law because it conflicts with the rule delineated by the Florida Supreme Court in *Hutchison*" concerning nominal damages' permissive nature. *Id.* at 859. The Florida Supreme Court accepted jurisdiction but dismissed the petition for review upon the parties' stipulation for dismissal. *Brooker v. Univ. Cmty. Hosp., Inc.*, 116 So. 3d 1259 (Fla. 2013) (accepting jurisdiction); *Brooker v. Univ. Cmty. Hosp., Inc.*, 115 So. 3d 998 (Fla. 2013) (dismissing).

In the instant case, we need not decide the issue of whether nominal damages are permissive (under breach of contract or any claim allowing for nominal damages). While *Wilson* argued nominal damages are permissive and not mandatory, that opinion specifically noted the case did not involve a situation "where the evidence did not exist or [where the evidence] was insufficient to show the amount of actual damages[,]" and instead involved an instance in which "the presented evidence supported a finding of zero damages[.]" *Id.* That is not the case here.

In the instant case, Appellant sought three counts of breach of contract and one count of breach of fiduciary duty against Employee. Appellant also sought one count of aiding and abetting breach of fiduciary duty and

one count of tortious interference with advantageous business relationships against Competitor. A nominal damages award is appropriate when there is a breach of contract, breach of fiduciary duty, or an aiding and abetting a breach of fiduciary duty cause of action. *See Beverage Canners, Inc. v. Cott Corp.*, 372 So. 2d 954, 956 (Fla. 3d DCA 1979) (nominal damages were applicable in a case involving a breach of contract, where the plaintiff failed to prove lost profit damages); *Minotty v. Baudo*, 42 So. 3d 824, 836 (Fla. 4th DCA 2010) (nominal damages are available "[w]here a breach of fiduciary duty is shown but no actual damages are proved"); *In re Basil Street Partners*, No. 9:11-bk-19510-FMD, 2013 WL 3209481, at *1, *3 (Bankr. M.D. Fla. Mar. 4, 2013) (applying Florida law and implying the same as to a claim for aiding and abetting a breach of fiduciary duty). However, "because proof of actual damages is an element of a cause of action for tortious interference," nominal damages are not available when a party fails to prove actual damages in such an action. *Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 708 (Fla. 4th DCA 2008).

Although the trial court found that Appellant failed to sufficiently prove lost profit or disgorgement damages, the trial court expressly found Appellant "suffered damages" under his breach of contract, aiding and abetting breach of fiduciary duty, and tortious interference causes of action. And, while the trial court did not specifically find that Appellant suffered damages under its breach of fiduciary duty claim, the context and express finding that Appellant suffered damages through Competitor's role in aiding and abetting Employee's breach of fiduciary necessarily implied that Appellant suffered damages as to the breach of fiduciary duty claim as well.

Thus, we need not address the conflict between *MSM Golf* and *Wilson* as to whether nominal damages are permissive, because the law allows for nominal damages when a party fails to adequately prove damages for the breach of a contract, the breach of a fiduciary duty, or the aiding and abetting of a breach of fiduciary duty. Here, unlike in *Wilson*, the trial court *actually found* (either specifically or indirectly) Appellant had suffered damages as to those causes of action. Thus, we conclude the trial court erred in failing to award nominal damages on those specific claims. However, because tortious interference requires proof of actual damages and Appellant failed to sufficiently prove actual damages at trial, we hold the trial court did not err in awarding zero damages on Appellant's tortious interference claim.

8

**Conclusion**

Because Appellant raised the issue of nominal damages in a non-jury trial before the issuance of final judgment, and because the trial court found (either specifically or indirectly) that Appellant suffered damages under its breach of contract, breach of fiduciary duty, and aiding and abetting breach of fiduciary causes of action—but awarded zero damages despite nominal damages being appropriate for such—we hold the trial court erred in not imposing nominal damages as to those causes of action. We therefore reverse and remand for the imposition of nominal damages concerning those claims.  We otherwise affirm on all issues.

*Affirmed in part, reversed and remanded in part.*

CIKLIN and GERBER, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***

9