PER CURIAM.
Appellant, Peter Nolan (Husband), appeals the Final Judgment of Dissolution of Marriage. He raises several issues: (1) the trial court erred in awarding durational alimony to his former wife, Robin Nolan (Wife); (2) the court abused its discretion in ordering Husband to pay the amount of support awarded to Wife; (3) the court erred in failing to distribute all of the marital assets and liabilities; (4) the court erred in awarding portions of non-marital and partially non-marital property to Wife; and (5) the court abused its discretion in valuing the parties’ individual retirement accounts as of different dates without a basis for doing so.
Regarding the first issue, Husband claims that Wife never pled durational alimony and he did not have proper notice of that claim. However, the record reveals that the issue was tried by consent. We, therefore, believe that the trial court properly awarded durational alimony for a two-year period, but improperly calculated the amount. Wife testified that she only wanted and needed durational alimony in the amount of $988 per month. Despite the Wife’s testimony, the trial court awarded her $1,500 in durational alimony without making any specific findings regarding her need and Husband’s ability to pay that amount. We believe that this amount is an error and the proper award should be the amount requested and needed, which is $988. As to the length of the durational alimony, Wife concedes that the trial court inadvertently ended the 24-month dura-tional alimony on December 31, 2013, as opposed to December 31, 2012. On remand, the correct termination date should be specified in the final judgment.
As to the second issue, the trial court awarded Wife the temporary exclusive occupancy of the marital home until the children finished high school, without giving any consideration to the value of that exclusive occupation, thus leading Husband to argue that the trial court’s failure to take this value into account in setting support awards was error. In addition to Husband’s obligation to pay dura-tional alimony, he was also ordered to pay one-half of the mortgages, taxes, and insurance on the home in the amount of $963.39 per month, child support in the amount of $1,220 per month, and one-half of the children’s car insurance in the amount of $125 per month. We agree with Husband that the trial court erred in ordering Husband to pay durational alimony and one-half of the mortgages, taxes, and insurance, in addition to alimony and child support, without considering that Wife and children had exclusive possession of the marital home and factoring those house-related payments into the calculation of child support. See Sency v. Sency, 478 So.2d 432, 433 (Fla. 5th DCA 1985) (“Exclusive possession given an ex-spouse and children of a marriage always constitutes an aspect of child support in kind and *172 sometimes also constitutes an aspect of alimony.”). Under Sency, the award of exclusive possession would have to be deemed an aspect of child support in kind or an aspect of alimony. The appropriate manner in which the exclusive possession aspect should be dealt under the facts and circumstances of the instant case requires the trial court to determine the fair market rental value of the home and include that figure in Wife’s gross income for purposes of calculating child support under the statutory guidelines. Mitchell v. Mitchell, 841 So.2d 564, 571 (Fla. 2d DCA 2003) (holding that if marital home is awarded exclusively to former wife during the children’s minority, the trial court “must determine the fair market rental value of the home and include that figure in [the former wife’s] gross income for purposes of calculating child support under the statutory guidelines”); see also Berger v. Berger, 559 So.2d 737, 739 (Fla. 5th DCA 1990) (“Exclusive possession in circumstances such as in the instant case constitutes an aspect of child support.”); Sency.
Turning to the third issue, the parties agree that the trial court did not distribute all of the marital assets and liabilities, contrary to the dictates of section 61.075(3), Florida Statutes (2010), and that remand is required. The parties’ financial affidavits, entered into evidence, reflected various assets and liabilities and the amounts assigned thereto that went unaddressed by the court in the Final Judgment. Wife asks that, if this court reverses the equitable distribution, it do so with instructions to the trial court to allocate the assets and liabilities as she requested ■ and not as Husband requested. Husband protests that Wife’s proposal is unfair, pointing out, inter alia, that she claims $7,000 in student loan debt for work towards her master’s degree, yet she had admitted at trial that her debt would be reimbursed by the State if she performed well in her classes. Obviously, reversal is required but this court will not engage in a fact-dependent determination of what assets and debts should be assigned to whom — this is a matter for the trial court.
The fourth issue involves three IRA accounts Husband claims are non-marital. Husband asserts that the two IRAs he held through PFS Investments, identified as Roth IRA 2047 and IRA 0155, were non-marital assets and thus the court erred in awarding Wife one-half the value of each. Wife answers that Husband failed to provide the trial court with any evidence of the non-marital nature of these assets. We agree with Wife. These two IRAs were not listed on Husband’s Amended Financial Affidavit as non-marital and, when Husband was asked during his testimony whether he was requesting the court to equitably distribute them, he replied, ‘Tes, I am.” Husband simply failed to claim these assets were non-marital assets and never argued the nature of the assets to the trial court. In fact, he agreed to their equitable distribution.
Regarding the third IRA, Husband asserts that the Roth IRA 2038 was partially non-marital and thus it was error for the trial court to grant a full 50% of its value to Wife. He contends that she did not meet her burden of proving what portion of the account was hers and therefore the entire account should have been given to him. Husband cites Zaborowski v. Za-borowski, 547 So.2d 1296 (Fla. 5th DCA 1989), which held that the burden is on the nonparticipant spouse to prove a marital interest in a pension plan and its value. However, there is no evidence that Roth IRA 2038 was a “pension plan” as contemplated by Zaborowski, or how it was funded, or the date it was funded. There was no evidence before the trial court from *173 which it could have concluded there was any claim by either party that it was other than a marital asset. Accordingly, we affirm as to the fourth issue.
Finally, in the fifth issue Husband contends that the trial court abused its discretion in using different dates when assigning values to the parties’ separate retirement accounts. Husband’s November B, 2010, Amended Financial Affidavit reflected $101,526 as the value of his 401 (k) as of that date and this is the figure the trial court used. The value reflected on the Amended Financial Affidavit was an increase from the amount shown on Husband’s April 2010 initial Financial Affidavit, filed just after Husband filed for divorce, which showed a value of $96,541. Wife’s Florida Retirement System plan was valued as of the date of filing, apparently because that was the date she provided to FRS when she requested a valuation determination from that agency. The trial court did, in fact, note in the Final Judgment that it had used the values provided in Husband’s Amended Financial Affidavit, but it did not explain why it chose differing dates when valuing the parties’ separate retirement assets. On remand, the trial court should use the value of the 401(k) reflected in Husband’s initial affidavit, which would make the valuation dates of both party’s retirement funds consistent.
In conclusion, we (1) affirm the court’s choice of durational alimony but remand for correction of the amount of durational alimony to the amount Wife expressly sought ($988); (2) remand for correction of the termination date of durational alimony to December 31, 2012, as agreed by the parties; (3) remand for determination of the fair market rental value of the home and recalculation of the child support award after including that figure in Wife’s gross income for purposes of calculating child support under the statutory guidelines; (4) remand for valuation of the assets and liabilities upon consideration of the values assigned in the parties’ financial affidavits and their testimony and for an equitable division of those assets and liabilities; and (5) remand for adjustment of the equitable division of Husband’s 401 (k) using the date of filing value as set forth in his initial Financial Affidavit. Because Husband failed to adduce evidence that any portion of the IRAs were non-marital, he is not entitled to a second bite at the apple to do so on remand.
AFFIRMED in part; REVERSED in part; REMANDED.
ORFINGER, C.J., SAWAYA and TORPY, JJ., concur.